UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JUSTIN WITTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:11CV2036 ERW |
| ) | |
| KEVIN CULTON, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Kevin Culton's Motion for Summary Judgment [ECF No. 123].

**I.     STATEMENT OF UNCONTROVERTED FACTS**

Based on Defendant's Statement of Uncontroverted Material Facts [ECF No. 124-1] and Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts [ECF No. 129], the following facts are undisputed, or have not been specifically controverted pursuant to E.D. Mo. L.R. 7-4.01(E).

Plaintiff Justin Witte is an inmate in the Missouri Department of Corrections at the South Central Correctional Center.  On August 25, 2009, Plaintiff arrived at Potosi Correctional Center (PCC), where he initially received a single-man cell.  Due to previous assaults by fellow inmates, Plaintiff often refused to double-cell.  In particular, one assault in 2001 left Plaintiff unconscious and necessitated hospitalization.  Since then, Plaintiff has had medical problems with his back.

On August 26, 2009, Plaintiff met Defendant Kevin Culton, a corrections officer at PCC, for the first time.  Defendant began to escort Plaintiff to a new double-cell, when Plaintiff told

Defendant that he would not move into the new double-cell.[1]  Rather, Plaintiff decided he would sit on a nearby restraint bench until he received a single-man cell.  Plaintiff turned and headed toward the bench.  Defendant saw Plaintiff's movement and believed Plaintiff was attempting to lunge toward him.  In response, Defendant took Plaintiff to the ground and then secured him to the restraint bench.  Then, Sergeant Willie Forbes escorted Plaintiff to the medical unit.  Sergeant Forbes observed that Plaintiff had no visible difficulty in walking or standing up straight during the 60-yard walk to the medical unit.  At the medical unit, Nurse Tammy Bordeau examined Plaintiff, who complained that his head hurt.  Nurse Bordeau noticed a small red area on Plaintiff's head, but noted no bleeding.  Plaintiff's medical records show no complaints of back pain in the following months.  In October 2009, Plaintiff again began to complain of back pain, but attributed it to his assault in 2001.

Plaintiff subsequently filed suit.  His Third Amended Complaint [ECF No. 97] alleges that Defendant's actions on August 26, 2009 caused severe injury to Plaintiff's back and amounted to an excessive use of force in violation of the Eighth Amendment and 42 U.S.C. § 1983.

## II.    SUMMARY JUDGMENT STANDARD

A court shall grant a motion for summary judgment only if the moving party shows that "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  By definition, material facts "might affect the outcome of the suit under the governing law," and a genuine dispute of material fact is one "such that a reasonable jury could return a verdict for the

---

[1] Defendant's Statement of Uncontroverted Material Facts simply states, "Plaintiff informed Defendant Culton that he would not go into the new cell." [ECF No. 124-1 at ¶ 13].  The Court notes, however, that the cited portion of the record further explains that Plaintiff asked Defendant for protective custody from his new cell mate, who had allegedly threatened Plaintiff the previous night. [ECF No. 124-2 at 59:2-15].

2

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The moving party bears the initial burden of proof in establishing "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). The moving party must show that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party must then set forth affirmative evidence and specific facts that demonstrate a genuine dispute on that issue. *Anderson*, 477 U.S. at 250. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine dispute of material fact exists. Fed. R. Civ. P. 56(c)(1); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must demonstrate sufficient favorable evidence that could enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead

"perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## III.   DISCUSSION

Defendant argues that the Court should grant summary judgment in his favor. First, Defendant maintains that no genuine dispute exists as to whether Plaintiff suffered a violation of his Eighth Amendment rights. Alternatively, Defendant avers that he is entitled to qualified immunity. Finally, Defendant claims that if the Court grants summary judgment as to Defendant's § 1983 claim, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.[2]

### A.   *No Genuine Dispute of Material Fact Exists as to Plaintiff's Excessive Force Claim, and Defendant is Entitled to Judgment as a Matter of Law*

"The Eighth Amendment protects incarcerated prisoners from cruel and unusual punishment, and this protection is grounded upon their right to be free from unnecessary and wanton infliction of pain at the hands of correctional officers." *Jones v. Shields*, 207 F.3d 491, 494-95 (8th Cir. 2000). The Court must assess an excessive force claim in light of the fact that prison settings sometimes require the use of force. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). Thus, "guards are liable only if they are completely unjustified in using force[.]" *Id.* To prove an Eighth Amendment violation, a prisoner must establish two requirements. *Id.* First, the prisoner must show a

---

[2]Defendant states that "Plaintiff also asserted the state law claims of assault and battery against Defendant Culton." [ECF No. 124 at 12]. Plaintiff's Third Amended Complaint refers to state law only once, in the "Third Cause of Action." [ECF No. 97 at 11]. The Third Cause of Action alleges that PCC correctional staff violated Mo. Rev. Stat. § 217.375, which generally concerns administrative segregation for prisoners who require separation from other offenders. The Court is unclear as to exactly which portion of § 217.375 Plaintiff accuses Defendant of violating. In any event, the Court declines to exercise supplemental jurisdiction over any remaining state claims against Defendant pursuant to 28 U.S.C. § 1367(c)(3). Any remaining state law claims against Defendant are hereby dismissed without prejudice.

"sufficiently serious" deprivation of rights. *Id.* Second, the prisoner must prove that the prison officials had a "sufficiently culpable state of mind." *Id.* Defendant claims that no genuine dispute of material fact exists as to either of these two requirements, and that the Court should therefore grant summary judgment in his favor.

*1.     Plaintiff Did Not Suffer a Sufficiently Serious Deprivation of Rights*

Defendant argues that he undisputedly applied only *de minimis* force. Defendant claims that after the alleged assault, Plaintiff exhibited no immediate signs of injury. Additionally, Defendant avers that any back injury currently ailing Plaintiff results from preexisting conditions, not Defendant's actions. Finally, Defendant asserts that because he merely took Plaintiff to the ground after reasonably perceiving a threat, he did not seriously deprive Plaintiff of any constitutional rights.

Plaintiff responds that Defendant used greater than *de minimis* force. He asserts that after the alleged assault, he had great difficulty walking, and he argues that Defendant's use of force ultimately resulted in a need for back surgery. Plaintiff acknowledges his preexisting back problems, but claims his back pain greatly increased after Defendant's use of force.

"[N]ot every push or shove violates the Constitution, but any use of force greater than *de minimis*, or any use of force that is 'repugnant to the conscience of mankind,' does." *Dormire*, 519 F.3d at 446 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)). The magnitude of any resulting injury, while probative of the degree of force used, is not a threshold requirement for proving an excessive force claim under the Eighth Amendment. *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013). "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (internal quotations omitted).

As to a sufficiently serious deprivation of rights, Defendant has met his initial burden of proving "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). First, Defendant refers the Court to multiple places in the record that suggest Plaintiff suffered only *de minimis* injuries. He notes that the affidavit of Sergeant Willie Forbes states that after the use of force, Plaintiff "walked unassisted the approximate 60 yards to the medical unit" and "showed no difficulty walking or standing up straight." [ECF No. 124-10 at ¶¶ 8-9]. Additionally, Plaintiff testified at his deposition that Nurse Tammy Bordeau examined his head, which had a small red spot, but exhibited no bleeding. [ECF No. 124-3 at 93:4-94:19].[3] Defendant also cites Plaintiff's medical

---

[3] Defendant's cursory summary of Nurse Bordeau's medical examination fails to mention that Plaintiff also complained of pain in his arm, back, knee, leg and toes:

> Q. And what did you – did [Nurse Bordeau] ask, you know, what your complaint was?
>
> A. Well, yeah. I had my – my head hurt, and my arm hurt, my back hurt, my right knee and my leg and three toes.
>
> Q. And is that – that's what you told her?
>
> A. Yeah. She – she just looked – the only thing she did was look at my head and said that it wasn't bleeding. You'll be fine. Get him out of here. And that's basically all I can recall that she did. And Sergeant Forbes asked me what happened. And I explained to both of them exactly what happened. And they just laughed at me. And she said get him out of here, we're done. And I had asked to see the doctor, since she was not giving me any attention. And she said you're not seeing the doctor today. Just get him out of here. And I left.

[ECF No. 124-3 at 93:15-94:6]. However, "[a] mere scintilla of evidence is insufficient to avoid summary judgment. If the evidence is not significantly probative, the [movant is] entitled to summary judgment as a matter of law." *Moody v. St. Charles Co.*, 23 F.3d 1410, 1412 (8th Cir. 1994). Thus, Plaintiff's own self-serving deposition testimony is insufficient to defeat Defendant's Motion, and this portion of the record fails to create a genuine dispute of material fact. *Barbee v. Central Parking Systs., Inc.*, No. 4:06CV1716 TIA, 2008 WL 5101008, at *6 (E.D. Mo. Nov. 26, 2008).

records to show that Plaintiff's injury required no further treatment and that Plaintiff made no further medical complaints relating to the use of force until November 2, 2009. [ECF No. 124-7 at 977-92]. Finally, Defendant notes that Plaintiff had preexisting back injuries, suggesting Defendant did not cause Plaintiff's medical problems. The record lacks any documentation that Plaintiff complained of back pain for two months after the use of force. [ECF Nos. 124-4 at 143:11-14, 124-7 at 979-992]. Additionally, when Plaintiff began to complain of back pain again, he attributed it to his 2001 assault and denied any new injuries or change in condition. [ECF No. 124-7 at 992-93, 1002-08].[4] In light of these specific references to the record, the Court finds that Defendant has established that Plaintiff suffered, at most, a *de minimis* injury.

Defendant's burden, however, does not end there. The Supreme Court has made clear that "the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of force applied, is not in and of itself a threshold requirement for proving" an excessive force claim under the Eighth Amendment. *Santiago*, 707 F.3d at 990. Thus, Defendant cannot meet his burden solely by demonstrating a *de minimis* injury. Rather, as the movant, Defendant must establish that he undisputedly applied *de minimis* force. Defendant has met this burden by citing portions of the record that demonstrate he applied force only as necessary to address

---

[4]Defendant also cites *Lidge v. Sears, Roebuck & Co.*, 318 F. Supp. 2d 830 (W.D. Mo. 2004), for the proposition that Plaintiff lacks competence to testify about the purported aggravation of his preexisting back injuries. He claims that such subject matter falls exclusively within the realm of expert testimony. In *Lidge*, the district court found that the plaintiff's plain statement affidavit was insufficient to *rebut* a "properly-supported motion for summary judgment." *Id.* at 838. That is, in moving for summary judgment, the defendant offered expert testimony, stating that the plaintiff's complex injuries could not have been aggravated by the defendant. *Id.* When the burden shifted to the plaintiff, the plaintiff's lay testimony was insufficient to create a genuine dispute of fact. *Id.*

Here, however, Defendant has not proffered any expert testimony suggesting that the use of force failed to aggravate Plaintiff's preexisting conditions. Accordingly, Plaintiff has no duty to offer expert testimony in support of his position, and *Lidge* does not form the basis of the Court's decision on this Motion.

a reasonably perceived threat. *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006). Specifically, the Report of Incident filed after the alleged assault states that Plaintiff turned toward Defendant, "[a]ttempting to strike [Defendant] in the face with his head." [ECF No. 124-11 at 1]. Additionally, both Defendant and Officer Phillip Comer, a witness of the altercation, state that Defendant grounded Plaintiff by taking control of his torso and then restraining him to the bench. [ECF No. 124-11 at 1-2]. This ended the use of force, and based upon these uncontroverted facts, the Court cannot find that Defendant's use of force was excessive.

Plaintiff does not properly controvert any facts relied upon in Defendant's Motion. Although the Court liberally construes pro se pleadings, *Smith v. St. Bernards Regional Med. Center*, 19 F.3d 1254, 1255 (8th Cir. 1994), Plaintiff's pro se status does not entitled him to disregard the Federal Rules of Civil Procedure or the Local Rules. *Bennett v. Dr. Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002); *Bailey v. Allstate Prop. & Cas. Ins. Co.*, No. 4:08CV1456TCM, 2009 WL 350616, at *1 (E.D. Mo. Feb. 10, 2009). Plaintiff has failed to respond to Defendant's Motion with any "specific references to portions of the record." E.D. Mo. L.R. 7-4.01(E). "All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." *Id.* Moreover, "a nonmoving party may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial." *Ruby v. Springfield R-12 Pub. Sch. Dist.*, 76 F.3d 909, 911 (8th Cir. 1996). Thus, Plaintiff has failed rebut Defendant's showing that no genuine dispute of material fact exists as to whether Defendant seriously deprived Plaintiff of his constitutional rights; he has failed to meet his burden in showing sufficient evidence from which a jury could return a verdict for him. *Anderson*, 477 U.S. at 249.

## 2. *Defendant Lacked a Sufficiently Culpable State of Mind*

Defendant also maintains that he undisputedly lacked the requisite mental state for an Eighth Amendment claim. Defendant contends that he acted in good faith, because he legitimately restrained Plaintiff after reasonably perceiving a threat. Plaintiff contends that Defendant acted with malicious and sadistic intent. Plaintiff asserts that Defendant unnecessarily attacked him, as at the time of the alleged assault, Plaintiff was handcuffed and did not resist Defendant.

In an excessive force case, whether a prison official had the requisite mental state turns on whether that official "applied . . . force 'in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Arnold v. Groose*, 109 F.3d 1292, 1298 (8th Cir. 1997) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). "[I]nferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 312. Whether a correctional officer applied force in good faith depends on several factors:

> whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.

*Blaukat*, 453 F.3d at 1112 (quoting *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002)).

Defendant's references to the record undisputedly establish that he lacked a sufficiently culpable state of mind, because he responded with force only as necessary to address a reasonably perceived threat. As Defendant argues, Plaintiff testified in his deposition that he first met Defendant on the day of the alleged assault – August 26, 2009. [ECF No. 124-2 at 20:15-21]. Additionally, Plaintiff stated that during Defendant's escort, Plaintiff told Defendant that he "wasn't going to cell with that guy, because he had threatened me the day before." [ECF No. 124-2 at 59:2-

9

6]. After informing Defendant of his intentions, Plaintiff decided he would sit on a nearby restraint bench instead of entering the new cell. [ECF No. 124-2 at 63:16-21]. Defendant cites multiple portions of the record that state Plaintiff made a sudden movement toward Defendant. [ECF Nos.124-11 at 2, 124-8 at ¶ 9, 124-9 at ¶ 7]. Defendant and another officer then used force to regain control of Plaintiff and secure him to the restraint bench. [ECF No. 124-4 at 67:15-69:12]. Thus, Defendant's references to the record establish that he applied force as necessary to make a "good faith effort to maintain or restore discipline," not "maliciously and sadistically for the very purpose of causing harm." *Groose*, 109 F.3d at 1298.

Plaintiff has failed to controvert Defendant's facts with references to the record. E.D. Mo. L.R. 7-401(E). Because Defendant has met his initial burden in showing the nonexistence of a dispute of material fact, and because Plaintiff has failed to meet his subsequent burden of rebutting Defendant's showing, the Court finds that Defendant undisputedly lacked a sufficiently culpable state of mind. *Norwood v. Potter*, 363 Fed. Appx. 415, 416 (8th Cir. 2010) ("[T]he District Court did not err in declining to consider the four volumes of material that [the nonmovant] filed with the court because she did not identify specific information in those materials that contradicted the [movant's] evidence."); *Shelton v. Boeing Co.*, No. 4:02CV286SNL, 2004 WL 5831716, at *4 (E.D. Mo. Mar. 3, 2004) ("[The plaintiff's] generalized, self-serving responses to the defendant's well-supported (by the evidentiary record) factual assertions are insufficient to create any material issues of fact.").

Accordingly, the Court finds that there are no genuine disputes of material fact as to Plaintiff's excessive force claim, and Defendant is entitled to judgment as a matter of law.

### B. *Defendant Is Entitled to Qualified Immunity*

Defendant argues that he is entitled to qualified immunity from suit, because he did not violate any clearly established constitutional rights of Plaintiff. Defendant maintains that, because Plaintiff cannot establish Defendant acted with a sufficiently culpable state of mind, Defendant did not infringe on Plaintiff's Eighth Amendment rights. Additionally, Defendant asserts that no reasonable officer would believe that attempting to regain control of a defiant inmate would violate the inmate's constitutional rights.

Plaintiff responds that Defendant is not entitled to qualified immunity, because Defendant violated a clearly established constitutional right. Plaintiff contends that Defendant acted with malicious and sadistic intent, because he used force even though Plaintiff was abiding by Defendant's escort.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is "*immunity from suit* rather than a mere defense to liability." *Robbins v. Becker*, 715 F.3d 691, 693 (8th Cir. 2013) (emphasis in original). The Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 694. The Court must conduct a "thorough determination" of Defendant's claim of qualified immunity. *Id.*

Qualified immunity safeguards officials for "bad guesses in gray areas," but not for "transgressing bright lines." *Littrell v. Franklin*, 388 F.3d 578, 582 (8th Cir. 2004). A qualified immunity analysis must consider the specific context of the case. *Williams v. Jackson*, 600 F.3d 1007, 1013 (8th Cir. 2010). That is, "the contours of an alleged constitutional right must be

sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (internal quotations omitted). Determining an assertion of qualified immunity involves a two-part inquiry: (1) "whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right"; and (2) "whether that right was clearly established at the time of the defendant's alleged misconduct." *Santiago*, 707 F.3d at 990. The Court may answer these questions in either order. *Pearson*, 555 U.S. at 236; *Jackson*, 600 F.3d at 1012.

The Court finds that, given the specific context of the case, Defendant is entitled to qualified immunity. Plaintiff has failed to set forth facts amounting to a violation of a constitutional or statutory right. The uncontroverted facts establish that while Defendant escorted Plaintiff to a new cell, Plaintiff informed Defendant that he refused to enter the new cell. When Plaintiff moved away from Defendant's escort, Defendant perceived a sudden movement and reasonably believed Plaintiff was attempting to lunge toward him. Defendant then subdued Plaintiff by taking control of Plaintiff's torso, grounding him, and securing him to the restraint bench. Given these facts, the Court finds that, at worst, Defendant's actions amounted to a "bad guess," rather than a clear transgression of a bright line. *Littrell*, 388 F.3d at 582. In such a situation, a reasonable officer would not believe that his actions violated a clearly established constitutional right. Thus, the Court concludes that Defendant is entitled to qualified immunity from Plaintiff's excessive force claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Culton's Motion for Summary Judgment [ECF No. 123] is **GRANTED**.

Dated this  30th  day of August, 2013.

/s/ E. Richard Webber
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE