UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JUSTIN WITTE,                          )
                                       )
          Plaintiff,                   )
                                       )
     vs.                               )          Case No. 4:11CV02036 ERW
                                       )
KEVIN CULTON, et al.,                  )
                                       )
          Defendants.                  )

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants William McKinney and Tammy

Bordeau's Motion for Summary Judgment [ECF No. 125].

## I.    STATEMENT OF UNCONTROVERTED FACTS

Based on Defendants McKinney and Bordeau's Statement of Uncontroverted Material Facts

in Support of Defendants' Motion for Summary Judgment [ECF No. 127] and Plaintiff Justin Witte's

Response to the Defendants McKinney and Bordeau's Statement of Uncontroverted Facts in Support

of Defendants' Motion for Summary Judgment [ECF No. 133], the following facts are undisputed,

or have not been specifically controverted pursuant to E.D. Mo. L.R. 7-4.01(E).

Plaintiff Justin Witte is an inmate in the Missouri Department of Corrections at the South

Central Correctional Center in Licking, Missouri.  On August 25, 2009, Plaintiff arrived at Potosi

Correctional Center (PCC), where he initially received a single-man cell.  The following day,

Plaintiff received a transfer order from his single-man cell to a double-man cell.  Plaintiff alleges that

Corrections Officer Kevin Culton assaulted him en route to his new cell.[1]  Approximately two to four

---

[1]The Court granted summary judgment in favor of Culton in its Memorandum and Order
dated August 30, 2013 [ECF No. 143].  Plaintiff's alleged assault by Culton is not at issue in the
instant Motion.

hours after the alleged assault, Sergeant Willie Forbes escorted Plaintiff to the infirmary.  At the infirmary, Defendant Tammy Bordeau, a nurse at PCC, conducted a medical examination of Plaintiff.  In her report, she wrote:

> 3 inch round red area noted to top r-side of head no abrasion or bleeding noted no swelling, r-forarm [sic] surface abrasion with no bleeding, some discoloration noted, 1 inch knot to back to r-arm, 3 cm discolorated area noted to l-forarm [sic].

[ECF No. 127-2 at 44-45].  Defendant Bordeau explained sick call and medication pass procedures to Plaintiff, and he verbalized an understanding of her instructions.  Plaintiff admits he knew how to schedule an appointment with the PCC physician, including how to fill out a Medical Services Request (MSR).  In September 2009, Plaintiff filed two MSRs – one for fingernail clippers and cleaning solution, and one for dry skin and lips.[2]

On October 16, 2009, Plaintiff filed an MSR for "Back Pain/Lay-in for bottom bunk and no work, lifting, bending or slippery floors."  In response to the MSR, Defendant William McKinney, a physician at PCC, examined Plaintiff on November 2, 2009.  Due to preexisting back problems, Plaintiff had been taking meloxicam, an anti-inflammatory medication.  Defendant McKinney renewed Plaintiff's prescription for meloxicam, prescribed back stretches and exercises, and approved a 60-day lay-in for a bottom bunk.

On December 1, 2009, Plaintiff filed another MSR, requesting a renewal of his meloxicam prescription.  Plaintiff received a December 14, 2009 appointment to see Defendant McKinney.  At the appointment, Defendant McKinney noted that Plaintiff had stopped his low back exercises.[3]

---

[2]Plaintiff argues that he filed other MSRs for back pain, all of which were ignored.  However, Plaintiff has failed to respond to Defendants' Motion with specific references to the record that place this issue in dispute.  In any event, Plaintiff's Third Amended Complaint fails to specify which PCC staff members allegedly ignored his MSRs.

[3]Plaintiff contends he stopped doing these exercises because they had become too painful for him to perform.

Defendant McKinney encouraged Plaintiff to restart the exercises and use good posture.  Defendant McKinney prescribed more meloxicam and requested to see Plaintiff for a follow-up visit in six months.

On February 4, 2010, Plaintiff filed an MSR for back pain, a lay-in, and an X-ray.  A nurse saw Plaintiff the next day and referred him to see Defendant McKinney on February 15, 2010.  At the appointment, Plaintiff told Defendant McKinney that he desired a bottom bunk and bottom walk[4] lay-in.  Defendant McKinney observed Plaintiff's range of motion and instructed him to continue taking meloxicam.  Defendant McKinney prescribed a bottom bunk lay-in, but noted that in his "medical judgment [a] lay-in for lower walk is not medically necessary."  [ECF No. 127-2 at 53].

Plaintiff next saw Defendant McKinney on May 10, 2010 for complaints of dry skin on his knees, heels and lips.  Defendant McKinney noted that Plaintiff's lips and feet appeared "moist," and described his knees as "clear."  [ECF No. 127-2 at 55].  He added that he "[c]ould not appreciate any lesions or dry skin."  [ECF No. 127-2 at 55].  He discussed the lack of physical findings with Plaintiff and advised him that a prescription was not medically necessary.

In May and June, Plaintiff failed to appear for at least three medical appointments.[5]  Then, on June 14, 2010, Defendant McKinney again examined Plaintiff for back pain.  Defendant McKinney reported that Plaintiff exhibited abnormal gait and posture, but did not appear to be in acute distress.  Defendant McKinney approved continued use of meloxicam and advised Plaintiff to use back exercises and good posture.

---

[4]A "bottom walk" or "lower walk" means a bottom level cell.

[5]Plaintiff argues that his back condition prevented him from attending his medical appointments and that he never voluntarily refused a medical appointment.

In July 2010, Plaintiff missed two more medical appointments.[6]  Similarly, Plaintiff did not appear for an appointment for back pain on July 19, 2010.  Then, on July 20, 2010, Plaintiff declared a medical emergency due to his back pain.  Defendant McKinney's notes indicate that Plaintiff reported "severe sharp pain" to the right of his lumbar spine, radiating down to his toes.  [ECF No. 127-2 at 24].  Defendant McKinney placed Plaintiff in "TCU"[7] for observation and instructed Plaintiff to continue taking meloxicam and use a heating pad as needed.

Plaintiff remained in TCU until July 26, 2010.  During this time, medical staff observed Plaintiff making his bed, ambulating in his cell, crawling to the cell door, using a towel to clean the floor, and kneeling in front of a sink to bathe.  On July 23, 2010, Defendant McKinney observed Plaintiff "rapidly sit up in bed to bend over and place the blanket over his feet" three times.  [ECF No. 127-2 at 21].  On July 26, 2010, Defendant McKinney saw Plaintiff slowly walk to the cell door with his hands on his thighs, without "facial grimacing or evidence of discomfort."  [ECF No. 127-2 at 19].  Defendant McKinney discharged Plaintiff from TCU that day, with a lay-in for cuffing in front, bottom bunk, bottom walk, and a wheelchair for out-of-cell use.  He also submitted a referral request to Vista Imaging for an MRI of Plaintiff's back and requested a follow-up appointment for Plaintiff within ten days.

The MRI results revealed a minor disc bulge across L3-4, and a severely abnormal disc space at L4-5.  Defendant McKinney discussed the MRI results with Plaintiff and referred him to Dr. John

---

[6]Plaintiff again contends that, due to his condition, he could not stand or walk to attend his appointment.  He maintains he made a written request for a wheelchair on the back of an MSR.  Neither party, however, has included the back of this MSR as an exhibit.  The Court notes that the "Offender Signature" line on a "Refusal of Treatment/No Show" form dated July 12, 2010 reads, "Refused to sign."  [ECF No. 127-2 at 26].

[7]The parties have not provided a definition of "TCU," which the Court construes to mean "Transitional Care Unit."

Spears of the Missouri Spine Institute for surgery.  Dr. Spears performed the surgery without complications on August 25, 2010.  After the surgery, Plaintiff returned to the TCU for observation and recovery.  On August 26, 2010, Defendant McKinney examined Plaintiff, who was "very pleased" and not experiencing back or leg pain.  [ECF No. 127-2 at 86].  Defendant McKinney ordered continuation of Plaintiff's medications and encouraged him to stand erect and ambulate in the hallway.  Defendant McKinney and the nursing staff checked on Plaintiff daily after the surgery.

On September 10, 2010, Plaintiff attended a follow-up appointment with Dr. Spears.  Dr. Spears observed significant improvement in Plaintiff's condition and recommended another month of time to heal.  Dr. Spears advised Plaintiff to maintain comfort, perform activities of daily living, and walk as much as possible.  He also prescribed a lay-in for no strenuous activity until October 10, 2010.  Defendant McKinney examined Plaintiff on September 29, 2010, and noted the ease with which Plaintiff moved on and off the examination table, in addition to Plaintiff's fluid ambulation into the room.  On October 28, 2010, Plaintiff filed an MSR for "Lower bunk lay-in cont."  [ECF No. 127-2 at 16].  Defendant McKinney renewed the bottom bunk lay-in for six months.

On December 7, 2010, Plaintiff filed an MSR, stating that he did not need an appointment, but wanted to inform the medical staff that he had pinched a nerve in his back.  He stated that, although stiff and sore, he could stand and walk.  That same day, a nurse spoke to Plaintiff at his cell door.  Defendant told the nurse that he did not need medical attention, but he wanted documentation that he had not yet fully healed.

Plaintiff filed an MSR on April 12, 2011, requesting a lay-in extension.  The next day, Defendant McKinney ordered a renewed lay-in for a bottom bunk.  Plaintiff filed an MSR for back stiffness on August 28, 2011.  He stated that he had pinched a nerve in his back again, but that he

5

did not currently need an appointment.  Defendant McKinney examined Plaintiff on September 2, 2011, and he advised Plaintiff to do exercises and return to normal activities.

On October 8, 2011, Plaintiff filed an MSR requesting another lay-in extension.  On October 13, 2011, Defendant McKinney approved a renewal of Plaintiff's lay-in for a bottom bunk for one year.  Plaintiff was transferred to Crossroads Correctional Center on October 25, 2011.

Plaintiff's *pro se* Third Amended Complaint [ECF No. 97] alleges that Defendants McKinney and Bordeau were deliberately indifferent to Plaintiff's medical needs in violation of the Eighth Amendment and 42 U.S.C. § 1983.  Specifically, Plaintiff maintains that on August 25, 2009, Defendant Bordeau ignored Plaintiff's complaints of back, arm and knee pain, and wrongfully refused to summon a physician.  Plaintiff claims that when he described his alleged assault to Defendant Bordeau, she merely laughed at him and instructed him to leave the infirmary.  Additionally, Plaintiff claims that Defendant McKinney treated him with deliberate indifference in the months before and after his back surgery.  He contends that Defendant McKinney failed to provide medical care before his surgery and refused to prescribe lower walk lay-ins.  Similarly, Plaintiff alleges that after his surgery, Defendant McKinney denied Plaintiff a lower walk lay-in, even though he had actual knowledge of Plaintiff's condition.

## II.   SUMMARY JUDGMENT STANDARD

A court shall grant a motion for summary judgment only if the moving party shows that "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  By definition, material facts "might affect the outcome of the suit under the governing law," and a genuine dispute of material fact is one "such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If the non-moving

party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The moving party bears the initial burden of proof in establishing "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). The moving party must show that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party must then set forth affirmative evidence and specific facts that demonstrate a genuine dispute on that issue. *Anderson*, 477 U.S. at 250. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine dispute of material fact exists. Fed. R. Civ. P. 56(c)(1); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must demonstrate sufficient favorable evidence that could enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary

7

judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## III.  DISCUSSION

The Eighth Amendment's proscription against cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs. *Jones v. Minn. Dept. of Corrs.*, 512 F.3d 478, 482 (8th Cir. 2008). "Deliberate indifference includes something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of [a] known risk." *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005). Prison medical staff may exhibit deliberate indifference by failing to respond to a prisoner's serious medical needs. *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999).

"To prevail on an Eighth Amendment claim of deliberate indifference to serious medical needs, an inmate must prove that he suffered from one or more objectively serious medical needs, and that prison officials actually knew of but deliberately disregarded those needs." *Roe v. Crawford*, 514 F.3d 789, 798 (8th Cir. 2008) (quoting *Hartsfield v. Colburn*, 491 F.3d 394, 396-97 (8th Cir. 2007)). A medical need is "objectively serious" if it has either been diagnosed by a physician as requiring treatment or it is so obvious that even a "layperson would easily recognize the necessity for a doctor's attention." *Jones v. Minn. Dept. of Corrs.*, 512 F.3d 478, 481 (8th Cir. 2008) (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). To establish a constitutional violation, a plaintiff must prove more than gross negligence and more than "mere disagreement with treatment decisions." *Id.* at 482. Rather, "a plaintiff must demonstrate the [defendant] actually knew of the risk and deliberately disregarded it." *Vaughn v. Greene Cnty., Ark.*, 438 F.3d 845, 850 (8th Cir. 2006). Actual knowledge "may be inferred from circumstantial evidence or from the very fact that the risk was obvious." *Jones*, 512 F.3d at 482.

**A.**     ***No Genuine Dispute of Material Fact Exists as to Whether Defendant Bordeau Deliberately Disregarded a Known Risk, and She Is Therefore Entitled to Judgment as a Matter of Law***

Defendant Bordeau argues that the Court should grant summary judgment in her favor, because Plaintiff cannot establish that she deliberately disregarded a medical need of Plaintiff. Defendant Bordeau asserts that by conducting a medical examination of Plaintiff after his alleged assault, she undisputedly provided medical care.  Plaintiff responds that on the date of his alleged assault, Defendant Bordeau should have conducted a more thorough examination or summoned a physician.  Plaintiff claims that during the examination, Defendant Bordeau ignored his complaints of severe back pain and numbness in his right leg and toes.

Defendant Bordeau has met her initial burden of demonstrating the nonexistence of a genuine dispute of material fact.  Various portions of the record demonstrate that she conducted a medical examination of Plaintiff after his alleged assault.  [ECF Nos. 127-1 at 73:8-12, 127-2 at 44-45].  Her notes from that day include descriptions of Plaintiff's head, arms, and back.  [ECF No. 127-2 at 45]. Based on her observations, she concluded that Plaintiff needed no further medical attention. Furthermore, the medical records from that encounter fail to suggest that Defendant Bordeau had actual knowledge of a serious medical problem.  Thus, even assuming Plaintiff had an objectively serious medical condition,[8] Defendant Bordeau has offered specific references to the record that demonstrate she did not act with deliberate indifference.

Plaintiff does not properly controvert any facts relied upon in Defendant Bordeau's Motion. Although the Court liberally construes pro se pleadings, *Smith v. St. Bernards Regional Med. Center*, 19 F.3d 1254, 1255 (8th Cir. 1994), Plaintiff's pro se status does not entitled him to disregard the

---

[8]In their Motion, Defendants Bordeau and McKinney do not address whether Plaintiff had an objectively serious medical condition.  However, they are still entitled to summary judgment if they undisputedly demonstrate that they did not deliberately disregard a known health risk.

Federal Rules of Civil Procedure or the Local Rules. *Bennett v. Dr. Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002); *Bailey v. Allstate Prop. & Cas. Ins. Co.*, No. 4:08CV1456TCM, 2009 WL 350616, at *1 (E.D. Mo. Feb. 10, 2009). Plaintiff has failed to respond with any "specific references to portions of the record." E.D. Mo. L.R. 7-4.01(E). "All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." *Id.* Moreover, "a nonmoving party may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial." *Ruby v. Springfield R-12 Pub. Sch. Dist.*, 76 F.3d 909, 911 (8th Cir. 1996). Thus, Plaintiff has failed rebut Defendant Bordeau's showing that no genuine dispute of material fact exists as to whether she deliberately disregarded an objectively serious medical condition of Plaintiff. *Anderson*, 477 U.S. at 249.

Viewing the uncontroverted facts in the light most favorable to Plaintiff, *Scott v. Harris*, 550 U.S. 372, 377 (2007), the Court finds that Defendant Bordeau's actions amount at worst to medical malpractice, which is not actionable under the Eighth Amendment.[9] *Anderson v. Purkett*, No. 4:07CV1251 JCH, 2008 WL 2952745, at *4 (E.D. Mo. July 29, 2008) (citing *Smith v. Clarke*, 458 F.3d 720, 724 (8th Cir. 2006)). The undisputed facts establish that, after Plaintiff's alleged assault, Defendant Bordeau conducted a medical examination of Plaintiff. She described Plaintiff's physical manifestations in her notes, and she concluded that he required no further medical attention. Plaintiff does not have a right to a particular type of requested treatment. *Mathison v. Swenson*, 143 Fed. Appx. 730, 733 (8th Cir. 2005); *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). Given these facts, no reasonable jury could conclude that Defendant Bordeau acted with deliberate indifference, which

---

[9]The Court is not affirmatively concluding Defendant Bordeau's actions rise to the level of medical malpractice.

has been likened to the standard of criminal recklessness. *Farmer v. Brennan*, 511 U.S. 839-40

(1994). Accordingly, the Court will grant summary judgment for Defendant Bordeau.

> ## B.      *No Genuine Dispute of Material Fact Exists as to Whether Defendant McKinney Deliberately Disregarded a Known Health Risk, and He Is Therefore Entitled to Judgment as a Matter of Law*

Defendant McKinney argues that the Court should grant summary judgment in his favor,

because he provided medical care and treatment to Plaintiff multiple times before and after

Plaintiff's surgery. Defendant McKinney asserts that his refusal to order a lower walk lay-in fails

to amount to a constitutional violation, and Plaintiff's disagreement with the course of treatment

does not establish deliberate indifference. Plaintiff counters that Defendant McKinney repeatedly

failed to address Plaintiff's serious medical needs, both before and after his surgery. He avers that

Defendant McKinney should have ordered a lower walk lay-in, particularly after Plaintiff's surgery,

and he maintains that Defendant McKinney's delay in proper care resulted in permanent nerve

damage.

Defendant McKinney has set forth facts that demonstrate he did not deliberately disregard

Plaintiff's medical problems. In the months leading up to Plaintiff's surgery, Defendant McKinney

repeatedly conducted medical examinations of Plaintiff. He observed Plaintiff's movements, and

he prescribed exercises and medications on multiple occasions. Regarding Plaintiff's requests for

a bottom walk lay-in, the record indicates that Plaintiff requested a lower walk lay-in on February

15, 2010. [ECF No. 127-2 at 52]. That day, Defendant McKinney ordered a lay-in for a bottom

bunk, but noted, "[I]n my medical judgment, [a] lay-in for lower walk is not medically necessary."

[ECF No. 127-2 at 53]. Moreover, on July 26, 2010, Defendant McKinney discharged Plaintiff from

TCU and ordered a lay-in for, among other things, a bottom walk. [ECF No. 127-2 at 76].

11

Defendant McKinney's medical attention to Plaintiff continued after the back surgery as well. After Plaintiff's surgery, Defendant McKinney conducted additional medical examinations of Plaintiff.   Defendant McKinney made notes of Plaintiff's progress and improving mobility. Although Plaintiff argues he requested a lay-in for a bottom walk on October 28, 2011, the MSR with that date states a request for "Lower *bunk* lay-in cont." [ECF No. 127-2 at 16] (emphasis added).   Pursuant to this request, Defendant McKinney ordered a bottom bunk lay-in for six months. [ECF No. 127-2 at 98].  Similarly, on April 12, 2011, Plaintiff filed an MSR requesting a "lay-in extension." [ECF No. 127-2 at 13].  Defendant McKinney renewed the lay-in for a bottom bunk the following day.  [ECF No. 127-2 at 100].  Finally, on October 8, 2011, Plaintiff filed an MSR for an additional "Lay-in extension." [ECF No. 127-2 at 10].  Defendant McKinney approved the request for one year.  [ECF No. 127-2 at 105].

Plaintiff has failed to controvert these facts with references to the record, E.D. Mo. L.R. 7-401(E), and given these facts, no reasonable jury could find that Defendant McKinney deliberately disregarded Plaintiff's medical problems.  Defendant McKinney has undisputedly established that he observed, examined, and communicated with Plaintiff on multiple occasions, both before and after Plaintiff's surgery.   Plaintiff's mere dissatisfaction with Defendant McKinney's medical decisions does not amount to a violation of the Eighth Amendment.   Plaintiff does not have a constitutional right to a desired course of treatment.  *Mathison*, 143 Fed. Appx. at 733; *Nix*, 86 F.3d at 765.

To the extent that Plaintiff claims Defendant McKinney delayed proper health care, Plaintiff has failed "to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment[.]" *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (affirming grant of summary judgment where inmate failed to offer medical evidence that delay in provision

of sunglasses had any adverse affect on inmate's prognosis).  Plaintiff has failed to offer any evidence that an earlier surgery would have prevented his purported nerve damage or otherwise changed his prognosis.

The Court finds that, at worst, Defendant McKinney acted unreasonably; "reasonableness is a negligence standard, and negligence cannot give rise to a deliberate indifference claim."[10]  *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009) (internal quotations omitted).  Thus, Defendant McKinney has met his initial burden, and Plaintiff has failed to respond with references that create a genuine dispute of material fact as to whether Defendant McKinney deliberately disregarded Plaintiff's medical needs.  The Court will therefore grant summary judgment in favor of Defendant McKinney.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants McKinney and Bordeau's Motion for Summary Judgment [ECF No. 125] is **GRANTED**.

Dated this  9th  day of September, 2013.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE

---

[10]There is no suggestion from any facts in the record that any action of Defendant McKinney rose to the level of negligent behavior.

13